UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. |
| **RICHARD DONALD CASSARA** | **05-19331** |
| **JACQUELINE RUSSO CASSARA** | SECTION A |
| DEBTORS | CHAPTER 7 |

## REASONS FOR DECISION

On December 16, 2006, Richard and Jacqueline Cassara ("Debtors") filed a Motion to Reopen Case to Deem Tax Debts Discharged ("Motion").[1] On February 2, 2009, the Court granted the Motion when no opposition was received.[2] On February 12, 2009, the Internal Revenue Service ("IRS") filed a Motion for New Trial,[3] which was heard on March 10, 2009. At the hearing, the Court held that the case would remain open, but the Court would reconsider whether the tax debts were discharged. The Court set the issue for hearing on April 21, 2009, to allow for pretrial discovery. The hearing was subsequently continued to June 9, 2009; then August 25, 2009; then October 27, 2009; and finally November 24, 2009, by the consent of the parties as discovery was conducted. At the hearing on November 24, 2009, the Court ordered the filing of pretrial briefs no later than January 9, 2010, with reply briefs due no later than January 16, 2010. On February 9, 2010, the Court held oral argument, accepted all exhibits to the filed briefs into evidence and took the matter under advisement.[4]

---

[1] Pl. 33.

[2] Pl. 37.

[3] Pl. 40.

[4] Pl. 66.

**Facts**

Debtors filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on October 13, 2005, after a long and arduous battle with IRS.

Debtors' story begins in 2000, when they requested an extension of time to file their individual 1999 tax return until October 15, 2000. In 2001, Debtors' 2000 tax return was due on April 15, 2001. Both returns were filed late. Debtors' 1999 return was filed on September 5, 2002, and Debtors' 2000 return was filed on August 26, 2002. The returns reflected $60,719 in taxes owed.[5]

On September 20, 2002, Debtors filed an Offer In Compromise ("Offer") with the IRS for their outstanding tax debt.[6] The Offer was rejected in March 2003.[7]

On March 14, 2003, the IRS filed a Notice of Tax Lien ("Lien"). On April 1, 2003, Debtors filed a Collection Due Process Request ("DPR") with the IRS staying collection of the tax debt.[8]

On May 14, 2003, Debtors appealed the denial of the Offer ("Appeal").[9]

---

[5] Pl. 59, Debtors' Brief Re Dischargeability of 1999 and 2000 Federal Income Tax Liabilities ("Debtors' Brief") at 2, and Exh. A to same; Pl. 60, Debtors' Reply Brief Re Dischargeability of 1999 and 2000 Federal Income Tax Liabilities ("Debtors' Reply Brief"), Exh. A and B.

[6] Evidence of the Offer was not submitted, but neither party challenged its existence.

[7] Debtors' Brief at 3.

[8] Pl. 58, Brief of IRS Re Dischargeability of Federal Income Taxes for Tax Years 1999 and 2000 ("IRS Brief"), Exh. E.

[9] IRS Brief, Exh. A.

On June 3, 2003, the IRS filed a Notice of Intent to Levy indicating that collection on the outstanding debt would commence.[10]

Debtors were notified of the denial of their Appeal on April 20, 2004. Simultaneously, the Appeals Officer began discussions regarding a voluntary repayment plan and sent Debtors a confirming letter on same dated July 23, 2004.[11]

On August 23, 2004, the IRS formally rejected Debtors' Offer because in its opinion, sufficient assets and income existed to satisfy the tax liability.[12] A formal decision on Appeal was entered on August 23, 2004.

The Appeals Officer continued to negotiate with Debtors regarding terms of a voluntary payment plan until January 2005. The discussions included consideration of Debtors' request for abatement of interest and penalties as well as an installment repayment plan. An appeal summary was entered on January 10, 2005,[13] and Debtors' request for abatement was denied by letter dated February 4, 2005.[14]

The letter dated February 4, 2005, also acknowledged that because the Notice of Intent to Levy had been given while the Appeal and DPR were pending, the Notice of Intent to Levy was wrongful. As a result, any attempt to collect taxes based on the amounts determined on Appeal

---

[10] Debtors' Brief at 3, Exh. A.

[11] Debtors' Brief, Exh. A.

[12] *Id.*

[13] Pl. 61, Reply Brief of the IRS Re Dischargeability of Federal Income , Exh. C.

[14] IRS Brief, Exh. F.

could only be instituted after the filing of a new notice of intent to levy. Based on this representation, Debtors withdrew their DPR on March 4, 2005.[15]

The IRS was scheduled as an unsecured nonpriority creditor on Debtors' schedules, with a mailing address of "Memphis, TN 38118."[16] Debtors' mailing matrix did not list the IRS as a party for notice or service of the various pleadings, notices or orders entered in this case. However, Mr. James Letten, United States Attorney for the Eastern District of Louisiana ("U. S. Attorney") was listed as a party on the mailing matrix.

The IRS was not served or noticed of the bankruptcy filing,[17] bar date,[18] deadline to object to discharge,[19] or order granting discharge.[20]

**Law and Analysis**

A chapter 7 liquidation case creates an estate from which claimants are paid. All debts arising prior to the filing are discharged at the conclusion of the case unless excepted from discharge under the Bankruptcy Code. The discharge absolves a debtor from personal liability for scheduled

---

[15] Debtors' Reply Brief, Exh. F.

[16] Pl. 7, Schedule F.

[17] Pl. 3.

[18] Pl. 15.

[19] Pl. 3.

[20] Pl. 18.

claims provided the claimant is noticed of the filing of the case and has a meaningful opportunity to participate.[21]

This case was filed prior to the effective date of Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"). Under the pre-BAPCPA version of Bankruptcy Rule 2002, the clerk was directed to give the debtor, trustee, and all creditors at least twenty (20) days' notice by mail of:

1. The meeting of creditors under §341;
2. The time fixed to accept or reject a proposed modification of a plan; and
3. The time fixed for filing proofs of claims pursuant to Rule 3003(c) (a bar date set by the court).

Twenty-five (25) days notice was required for the time fixed for filing objections and the hearing to consider confirmation of a chapter 13 plan.

The clerk is also required to provide notice to all creditors by mail of:

1. The order for relief (commencing the case);
2. The time allowed to file claims pursuant to Rule 3002 (chapter 7 bar date);
3. The time fixed for filing a complaint objecting to the debtor's discharge;
4. The time fixed for filing a complaint objecting to the dischargeability of a claim;
5. Entry of an order confirming a plan; and
6. A summary of the trustee's final report.

Former Bankruptcy Rule 2002 required that all notices be mailed to the address shown on the list of creditors or schedule of liabilities whichever was filed later.

---

[21] Section 523(a)(3) excepts from the operation of a discharge any debt "neither listed nor scheduled under section 521(1) of this title ... unless such creditor had notice or actual knowledge of the case in time for such timely filing ..." "Omission of a creditor's name from the mailing matrix is just as impermissible as omission from the formal schedules." *Matter of Smith*, 21 F.3d 660, 663 (5th Cir. 1994).

The preparation of the list of creditors ("mailing matrix") is the debtor's responsibility.[22] It is typically filed simultaneously with the debtor's schedules of assets and liabilities and statement of financial affairs. In this case, Debtors' filed a list of only ten (10) creditors with their initial petition for relief.[23] Approximately one month later, Debtors filed their schedules of liabilities but failed to update their mailing matrix.[24]

The schedules listed several creditors that were not included on the mailing matrix. All omitted creditors were scheduled as unsecured nonpriority claimants.[25] The IRS was one of the creditors omitted from the mailing matrix.

Depending on the party, the Clerk of Court notices, or serves, parties in interest listed on the mailing matrix through electronic notice or mail service. Those registered with the Clerk of Court for electronic filing receive electronic notice pursuant to Local Standing Order 2006-4. Other parties receive notice by first class mail. Pleadings are served by the filing party.

---

[22] The mailing matrix detailing all parties in interest with proper addresses is prepared and filed by the debtor at the commencement of the case. Local Rule 1007-2. A special mailing group of four (4) creditors is added to debtor's list by the Bankruptcy Clerk of Court's Office ("Clerk"). They include: the Collector of Revenue for the City of New Orleans; Louisiana Departments of Revenue and Labor; as well as, the U. S. Attorney. *See* Attorney Case Management Electronic Case Filing Procedures Manual. Other than these four parties, the Clerk adds to the mailing matrix only those parties who request special notice under Bankruptcy Rule 2002 and those that file proofs of claim. The Clerk only adds the IRS to the matrix in a Chapter 11 case.

[23] Pl. 1.

[24] Pl. 7.

[25] Bank of America, Chase Bankcard Services, the IRS, Orchard Bank, and Providian were scheduled but not listed on Debtors' mailing matrix.

Eight (8) notices were served by the Clerk of Court in this case prior to its initial closing. They included the notice of the initial filing of the case, first meeting of creditors, deadlines for objecting to discharge or dischargeability of claims, deadline for objecting to claimed exemptions, and waiver of need to file of proofs of claim. According to the certificates of service, the IRS was not notified of these events.[26] Other noticed matters included the deadline for filing claims,[27] the entry of the Order of Discharge,[28] and the approval of Trustee's Final Report and Account.[29] The IRS was not included in any of these notices. In addition, Trustee filed and served a Notice of Intent to Abandon Assets[30] and Motion to Compromise Claims.[31] None were forwarded to the IRS.

The IRS argues that because Debtors failed to notify it of their bankruptcy filing and all subsequent developments in the case, its claims are not discharged. Debtors' do not dispute that the IRS was omitted from the mailing matrix and did not receive any of the aforementioned pleadings or notices. Debtors argue instead that notification through the U.S. Attorney was sufficient to place the IRS on notice of the case and discharge the claim.

Debtors bear the burden of proving that the IRS has notice or knowledge under section 523(a)(3).[32]

---

[26] Pl. 3.

[27] Pl. 15.

[28] Pl. 19.

[29] Pl. 25.

[30] Pl. 9 and 15.

[31] Pl. 11, 16, 20, and 22.

[32] *U. S., Small Business Administration v. Bridges*, 894 F.2d 108, 111 (5th Cir. 1990).

Certificates of service filed in the record reflect that the U. S. Attorney was served with the various notices and pleadings in the case. Although the U. S. Attorney represents the IRS, the U. S. Attorney also represents almost every other federal agency as well. Further, the U. S. Attorney does not open files on service, but requires a referral from another agency or department in order to act. For this reason, a general service upon the U. S. Attorney is insufficient to notice the IRS.

In *U. S., Small Business Administration v. Bridges,* the Fifth Circuit found that "notice or knowledge of an Assistant United States Attorney cannot, as a general proposition, be imputed to the particular agency to which a debt is owing."[33]

> Recognizing the potential problems when an extensive, bureaucratic agency is involved as a creditor in a bankruptcy proceeding, a debtor should give special attention to insure timely and meaningful notice to the correct agency. ... When a debtor is at fault by failing to comply with the Bankruptcy Code's requirements to properly list creditors and schedule debts, the United States government should not, as a practical matter cannot, be charged with knowledge of the implications contained in each piece of paper - among the stream of documents entering its various offices each day - unless the agency particularly responsible for and familiar with the claims against the debtor has notice or actual knowledge of the debtor's bankruptcy case.[34]

Debtors have offered no contrary jurisprudence in support of their position. Therefore, the Court finds that notice on the U. S. Attorney does not constitute notice to the IRS.

Debtors also argue that the IRS had actual knowledge of the case despite the error in notice. "Actual knowledge" is "knowledge in time to avail a creditor of the benefits of the law, -in time to give him an equal opportunity with other creditors ..."[35]

---

[33] *Id.* at 112.

[34] *Id.* at. 111 - 113.

[35] *Stone v. Caplan*, 10 F.3d 285 (5th Cir. 1994).

Debtors aver that official IRS transcripts ("Official Transcripts") reflect entries for "Bankruptcy or other legal action filed" on October 13, 2005, the petition date., and "Removed bankruptcy or other legal action" on March 22, 2006, the date Debtors were discharged.[36] Debtors aver that these entries establish that the IRS was actually aware of the case's filing on, or shortly after, the petition date. The IRS has countered by explaining that the entries were actually made in 2007 after the completion of the case and when the IRS first learned of the bankruptcy. A review of the Official Transcript establishes that the dates of entry were in March and October 2007, long after the case was closed.[37] As such, they are not evidence of actual knowledge of the filing. Debtors have offered no other evidence of the IRS' actual knowledge. For the above reasons, this Court finds that the IRS did not have timely notice or actual knowledge of Debtors' bankruptcy case.

A creditor's inability to timely file a proof of claim results in its inability to protect its interests. For this reason, section 523(a)(3) provides, that a claimant without notice of the case is not affected by the order of discharge. Nevertheless, the Fifth Circuit has found that Bankruptcy Courts, as courts of equity, may allow debtors to amend schedules to add creditors after the proof of claim bar date "in exceptional circumstances appealing to the equitable discretion of the bankruptcy court."[38]

---

[36] IRS Brief, Exh. B and C.

[37] Pl. 61, Exh. H and I.

[38] *Robinson v. Mann*, 339 F.2d 547, 550 (5th Cir. 1964), and *Stone*, 10 F.3d at 290.

The existence of "exceptional circumstances is determined by weighing three (3) equitable factors articulated by the Fifth Circuit in the *Stone* and *Robinson* decisions. They are:

1. The reason the debtor failed to list the creditor on its mailing matrix;
2. The disruption which would occur if the untimely filing of the claim were allowed; and
3. If the listed and unlisted creditor in question would suffer prejudice."[39]

*Stone* was a no-asset case. As such, the Fifth Circuit reasoned that since creditors do not file proofs of claim in no-asset cases, and because no distributions occur, any creditor omitted from initial participation is not prejudiced by late addition to the case.[40]

Thus, while the Fifth Circuit has, in a no asset proceeding, allowed debtors to re-open their cases to schedule creditors accidentally forgotten, the ruling does not extend to asset cases such as Debtors'.

The Court accepts that Debtors' failure to notify the IRS was inadvertent and not as a result of fraud or intentional design. However, significant disruption and prejudice to the creditors, in particular the IRS, will occur if the untimely filing of the claim were allowed.[41]

The trustee in this case distributed over $23,000 in funds to unsecured claimants or approximately fifty 50% payment on filed claims. If the IRS were allowed to participate in the case, one of only two results could occur. First, if the IRS were entitled to priority status for all or some portion of its debt, the priority debt would be entitled to priority payment over that to unsecured creditors. Thus, the trustee would be compelled to recover from the unsecured class, funds

---

[39] *Id.*

[40] While *Robinson* first articulated the three (3) equitable factors, the Court did not make a determination and remanded the case.

[41] The Fifth Circuit found that "[w]ithout question, the third factor, which focuses on prejudice to creditors-in conjunction with the first factor-is the most critical. *Id*. at 291.

sufficient to satisfy the IRS' priority claims. At worst, that could amount to a one hundred percent (100%) disgorgement from the class.

If instead none or only a small portion of the IRS' debt were entitled to priority status, then disgorgement from the unsecured class would still occur, this time to first satisfy the priority claim and then, to the extent distributions were available for the unsecured class, to equalize the amounts paid to all members of the unsecured class now joined by the IRS.

Not only would either of these scenarios be disruptive to the creditor classes, but the Court Orders approving the trustee's account and proposed distribution scheme would have to be vacated. Significant administrative expenses to recover and redistribute funds would be incurred and lower the amounts available for ultimate distribution to all creditors.

Additionally, if the trustee were not successful in disgorging sufficient funds to pay the IRS' priority claims while also equalizing the amounts paid on its unsecured claim relative to the rest of the unsecured class, the IRS would be prejudiced through a discharge of its unsecured debt without the concomitant payment enjoyed by other unsecured creditors. Assuming that some portion of the IRS' claim is unsecured as the Debtors' contend, the IRS will be prejudiced by allowing, or requiring, their untimely participation.[42]

Accordingly, the Court finds that the debt to the IRS is not discharged. Because the discharge does not release Debtors' obligation to pay, the debt survives and is fully enforceable against Debtors. This principle is absolute regardless of whether or not the debt is priority or nonpriority debt.

---

[42] While the Court declines to address the status of the IRS' claims because that determination is not relevant to this decision, it is worth noting that Debtors allege that the IRS' entire debt is an unsecured, nonpriority claim, hoping to completely discharge it.

For the above stated reasons, the Court grants the Motion to Reopen for the limited purpose of determining dischargeability and finds that the claims of the IRS not discharged as a result of Debtors' filing and this Court's Order of Discharge. The Court declines to address the issues posed by Debtors regarding the IRS' priority or unsecured status because they are irrelevant to the determination of this matter. An Order in accordance with these Reasons will be rendered.

New Orleans, Louisiana, February 24, 2010.

                                              Hon. Elizabeth W. Magner
                                              U.S. Bankruptcy Judge